UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGAL ADDITIONS LLC, | No. C-08-2754 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE; AND GRANTING PLAINTIFF'S APPLICATION FOR APPROVAL TO SUBMIT EXHIBITS** |
| JEROME KOWALSKI, *et al.*, | |
| Defendants. | |
| _____/ | **(Docket Nos. 16, 18, 45)** |

Plaintiff Legal Additions LLC is a California corporation engaged in the business of legal recruiting and placement, primarily in California. Defendant Jerome Kowalski & Co, Inc. ("JKC") is a New York corporation also in the business of legal recruiting and placement; however, it serves primarily the New York and Washington D.C. markets. Defendant Jerome Kowalski is the President of JKC.[1] The parties do not dispute that, over the course of three years, Legal Additions and JKC worked together on a number of legal placements, but that their relationship deteriorated when a dispute arose between JKC and Legal Additions over commissions JKC earned from successfully placing attorneys in the New York office of Mitchell Silberberg & Knupp ("MSK"). Legal Additions contends that it is entitled to a portion of the commissions because it gave a tip to

---

[1] The third defendant sued in the case is Kowalski & Associates, Inc. JKC and Mr. Kowalski claim that Kowalski & Associates, Inc. is a corporation that was inactive for the duration of the events relevant to this litigation, and that Plaintiff confused the company with "Kowalski & Associates," which has been used as a dba for JKC. *See* Kowalski Decl. ¶ 2. Plaintiff has not contested that Kowalski & Associates, Inc. was in fact party to the joint venture, thus at this juncture, the Court's analysis includes only two defendants.

Defendants about MSK's need and thus facilitated the transaction and resulting commission. Legal Addition also contends its role in the transaction was part of an overarching agreement between JKC and Legal Additions. Defendants contend otherwise.

Legal Additions filed suit against Defendants alleging, *inter alia*, breach of contract and fraud. Currently pending before the Court are (1) Defendants' motion to dismiss for lack of personal jurisdiction and (2) Defendants' motion to dismiss for improper venue or, in the alternative, to transfer venue. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** both motions. The Court also **GRANTS** Legal Additions' request to submit exhibits but notes that the exhibits do not materially affect the Court's disposition of Defendants' motions.

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A. <u>Legal Standard</u>

> Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

If a defendant moves to dismiss for lack of personal jurisdiction (*i.e.*, arguing that there are insufficient contacts), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* at 800. "Any greater burden -- such as proof by a preponderance of the evidence -- would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

In determining whether a plaintiff has made a prima facie showing of jurisdiction, a court must take uncontroverted allegations in the complaint as true. *See Schwarzenegger*, 374 F.3d at 800. Furthermore, where the allegations are controverted and the parties proffer affidavits in support of their position, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

B.  Relevant Facts

As indicated above, Legal Additions initiated this lawsuit against Defendants after JKC refused to share the commissions it earned from the MSK placements. The main players, Legal Additions, JKC and MSK, reside in San Rafael, California, New York, New York, and Los Angeles, California, respectively. The scope of the parties' collaborative work in legal recruiting over the course of three years is undisputed. Legal Additions and JKC worked together on numerous unsuccessful placements prior to the MSK New York placements. These endeavors included seeking New York candidates for D.E. Shaw & Co., and seeking California placements and acquisitions for Crowell & Moring. It is also undisputed that the MSK placements at issue occurred solely in New York and that Legal Additions did not play any role in actually placing any of the attorneys in the MSK New York office -- *i.e.*, the placements occurred solely through Defendants' efforts rather than Legal Additions's. Given these circumstances, one might question whether this Court, located in California, has jurisdiction over Defendants.

Legal Additions, however, argues that the MSK placements should not be viewed in isolation from the numerous other endeavors because each project was part of a broader agreement to work together on legal placements on the East and West coasts. According to Legal Additions, the relationship between Legal Additions and JKC was something akin to a joint venture. *See* Gainer Decl. ¶ 10 ("By e-mail on January 23, 2006, again Kowalski in New York and I in California, we entered into and formed a commission sharing agreement for the purposes of cooperating in the placement of attorneys and other legal personnel in law firms and corporate legal departments, including mergers of law firms and expansions of law firm offices. We agreed to share equally on a 50/50 basis all commissions obtained from our endeavors."). Defendants deny the existence of such a relationship, *see* Kowalski Decl. ¶ 16 ("I am aware of no email, bearing such dates or any others,

3

reciting the terms of an agreement such as that specifically alleged by Legal Additions"), but, as noted above, conflicts in evidence at this stage are resolved in Legal Additions's favor. Because the Court must accept Legal Additions's evidence that there was, in essence, a joint venture, the Court cannot for jurisdictional purposes view the MSK transaction in isolation. Rather, the Court must consider the broader scope of the alleged joint venture between the parties and all of Defendants' contacts with California that were made pursuant to the alleged joint venture.

Legal Additions's evidence indicates that the parties' course of dealings prior to the MSK New York placement was fairly continuous. While the circumstances surrounding the MSK placements are in dispute, the course of dealings is not contested. The first joint effort arose in January 2006 when Mark Gainer, Legal Additions's principal and owner contacted Mr. Kowalski to ask if he would be interested in providing candidates for Legal Additions's client, D.E. Shaw & Co., a New York brokerage. *See* Gainer Decl. ¶ 9. At this point, the parties agreed to share equally on a 50/50 basis all commissions obtained from their endeavors. *See id.* ¶ 10 ("my email stated: 'Dear Jerry, I look forward to working with you especially, on New York placements. We have agreed to split commissions earned on shared placements on a 50/50 basis.' Kowalski responded – 'The arrangement is perfectly fine' (e-mail 1/23/06)."). In March 2006, Mr. Kowalski telephoned Mr. Gainer to discuss a placement opportunity for the law firm, Crowell & Moring ("Crowell"), which was seeking to expand its California operations by opening new offices in Los Angeles and the Bay Area. *See id.* ¶ 13. In the summer of 2006, Legal Additions continued to vet candidates for Crowell's California expansion, and also worked on finding candidates for Crowell's prospective Beijing office. *See id.* ¶ 17. During this time, Mr. Gainer reiterated through e-mail the existing 50/50 fee sharing agreement, and Mr. Kowalski did not disagree or comment. *See id.* ¶ 20.

In March 2007, Mr. Kowalski sought out Legal Additions's help to identify small Los Angeles firms for JKC's client to acquire. *See id.* ¶ 22. Mr. Gainer operated "always under the fee sharing 50/50 agreement with Kowalski." *Id.* In June 2007, Mr. Kowalski contacted Legal Additions again to work on Crowell's desired expansion in Southern California as well as into the Bay Area. *See id.* ¶ 23. In the course of identifying potential merger and placement prospects for Crowell, David Pauker of Legal Additions discovered that MSK, a Los Angeles based firm, was

uninterested in merging with Crowell, but rather was looking to expand its presence in Washington D.C. and open an office in New York. *See id.* ¶ 38. Through Mr. Pauker's persuasion, Legal Additions convinced MSK's Chairman, Tom Lambert, to work with JKC and Legal Additions in setting up its New York office. *See id.* ("Pauker touted Kowalski's knowledge of the New York legal market and convinced Lambert to consider us for MSK's forage into New York, and Pauker relayed this information to me."). Thus, the unsuccessful efforts to merge MSK with Crowell morphed into the MSK New York placement project. Legal Additions informed JKC of MSK's interest in expansion.[2] *See id.* ¶¶ 31, 39 ("July 26, 2007: 'We've uncovered that they [MSK] are looking to expand their presence in D.C. and open in New York. Got milk?'"). In August, 2007, Legal Additions arranged for Mr. Kowalski to meet with Mr. Lambert of MSK in New York. *See id.* ¶ 44. Aside from reporting that the meeting went well, *see id.* ¶ 46, Mr. Kowalski's only mention of MSK was that its expansion into New York was unlikely. *See id.* ¶¶ 55, 56. Subsequent to Legal Additions's identification of MSK's need, the parties continued to work together on placements and acquisitions through 2007 and into 2008. *See e.g. id.* ¶ 51 (Chapman & Cutler), ¶ 53 (Stroock & Stroock & Lavan), ¶¶ 69, 70 (Sonnenschein). It is undisputed that eventually, without any further substantive assistance from Legal Additions, JKC successfully placed attorneys from New York for MSK.

Throughout the course of JKC's dealings with Legal Additions, Defendants had numerous contacts with California including e-mail and telephone communications to Legal Additions in California, communications to prospective candidates and clients in California, as well as eights trips by Mr. Kowalski to California. *See id.* ¶ 4. Twice, Mr. Kowalski met with Mr. Gainer in San Francisco to discuss business opportunities; *See* Kowalski Reply Decl. ¶ 7 ("I only met Gainer twice in San Francisco."); Gainer Decl. ¶ 21. On a third visit to San Francisco, Mr. Kowalski met with prospective candidates whom Legal Additions had identified for the Crowell placement. *See* Gainer Decl. ¶ 44 ("Kowalski arrived in San Francisco on or about August 6, 2007; he met with Art Shartsis

---

[2] Defendants' main contention is that although Legal Additions informed them of MSK's interest in New York, they were well aware of it. The key factual dispute here is over whether Defendants had independent knowledge of MSK's interest, or whether the discovery of MSK's need arose from the Crowell searches.

5

(Shartsis Friese) and Peter Munoz (Reed Smith), both arranged by Legal Additions."). Mr. Kowalski also visited Southern California at least five times to meet with candidates and firms. *See id.* ¶ 4; *see e.g. id.* ¶ 43 ("During the first week of August 2007, Kowalski visited Los Angeles primarily on searches for Cromwell. He met with Mavis Gallen son, the senior partner at Ladas' Los Angeles office, which followed by introduction.").

C.  Specific Jurisdiction

In the instant case, Legal Additions does not contend that there is general jurisdiction over Defendants. Accordingly, the only inquiry is whether there is specific jurisdiction. A three-part test is used to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform (some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
>
> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

In the instant case, Legal Additions's main claims are for breach of contract and for fraud. Whether there is specific jurisdiction over each claim is addressed below. *See Data Disc*, 557 F.2d at 1289 n.8 (noting that, if "a plaintiff raises two separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim"). The Court notes, however, that, under the doctrine of pendent jurisdiction, if personal jurisdiction exists on one claim, it may exercise jurisdiction over the other because the two claims undisputedly "arise[] out of a common nucleus of operative facts." *Action Embroidery Corp. v. Atlantic Embroidery Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

D.  Breach of Contract

In its breach-of-contract claim, which is asserted against JKC only, Legal Additions contends that there was an agreement between the parties to cooperate jointly in making legal placements and share equally 50/50 on commissions obtained from those endeavors.  JKC breached this contract when it denied the existence of the venture and refused to pay Legal Additions's its agreed upon share of commissions.

In order for this Court to have jurisdiction over the breach-of-contract claim, Legal Additions must first make a showing that JKC "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802 (emphasis added).  The purposeful availment analysis is typically used in suits sounding in contract whereas a purposeful direction analysis is typically used in suits sounding in tort. *See id.*  Because the Court is considering a breach-of-contract claim, it conducts the "purposeful availment" analysis.

"'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  While "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction," *id.*, there may be sufficient minimum contacts where a contract has a substantial connection with the forum state.  "[T]he 'substantial connection' of a single contract with a forum state relates not to the physical transaction, *i.e.* the fact that it was delivered in the state, but to the 'quality and nature' of the relationship created by the contract." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1399 (9th Cir. 1986); *see also Sher*, 911 F.2d at 1362 (stating that a court must consider "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing").

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court provided guidance as to what kind of contractual relationship could give rise to personal jurisdiction.  There, the plaintiff-franchisor, a Florida corporation, sued the defendant-franchisee, a resident of Michigan,

for breach of contract. The plaintiff filed the lawsuit in Florida. The Supreme Court found there was personal jurisdiction in Florida:

> In this case, no physical ties to Florida can be attributed to [the defendant] other than [a colleague's] brief training course in Miami. [The defendant] did not maintain offices in Florida and, for all that appears from the record, has never even visited there. Yet this franchise dispute grew directly out of "a contract which had a substantial connection with that State." Eschewing the option of operating an independent local enterprise, [the defendant] deliberately "[reached] out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the franchisor] in Florida. In light of [the defendant's] voluntary acceptance of the long-term and exacting regulation of his business from [the franchisor's] Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated." [The defendant's] refusal to make the contractually required payments in Miami, and his continued use of [the franchisor's] trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida. For these reasons it was, at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries.

*Id.* at 479-80.

Accepting Legal Additions's evidence regarding the alleged joint venture as true, the Court finds that the situation in the case at hand is similar to that in *Burger King*. Here, as in *Burger King*, JKC reached out beyond its East Coast territory in order to engage a California recruiting company to jointly do business. Like the franchise agreement, the joint venture constituted not a single one-time sale, but a contract of some length with an ongoing relationship for their mutual benefit. JKC "envisioned continuing and wide-reaching contacts" with Legal Additions in California over the course of numerous potential placement transactions. *See id,* 471 U.S. at 480; *see also Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir. 1986) (finding purposeful availment satisfied when a defendant creates continuing obligations to forum residents). The nature of JKC's relationship with California was not random, fortuitous, or attenuated, rather it was ongoing and collaborative, with the purpose of better serving its national and international clients by engaging the expertise of a local search firm, Legal Additions, that was active in regions which JKC was not, thereby tapping into a greater pool of resources and connections. *See* Kowalski Decl. ¶ 4.

8

Moreover, the course of dealings show that parties performed over a span of three years (May 2005 - May 2008) on an agreement whereby each provided one another leads regarding legal placements in their respective regions. The parties anticipated benefits in the form of commission-sharing, which "would have depended upon activities in California." *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991). Many of the potential clients of the joint venture efforts, including MSK, were based in California. Accordingly, it is reasonably foreseeable that JKC may be called into account in the forum court.

JKC still protests that there should be no personal jurisdiction because its actual contacts with California were limited, consisting of e-mail and telephone communications to Legal Additions in California about placements in firms such as D.E. Shaw and Crowell and only several trips by Mr. Kowalski to California. First, it appears that California contacts were not so limited. Second, this factor is not dispositive. In *Burger King*, the defendant's actual contacts were also limited. What was of particular importance in *Burger King* was the nature of the relationship to the forum state and the contemplated future consequences of the contract.

Similarly, in *Roth*, where a California movie producer brought suit to determine the movie rights to the non-resident writer's novel, the Ninth Circuit found that there was personal jurisdiction over the defendants (residents of Mexico and Spain) in California, even though the defendants had visited the state only a handful of times, the plaintiff was responsible for soliciting the defendants, and the contract between the plaintiff and defendants was not negotiated in California. 942 F.2d 617. According to the court, there was jurisdiction in spite of these facts because "most of the future of the contract would have centered on the forum." *Id.* at 622.

> Though the shooting most likely would have taken place in Brazil, all of the editing, production work, and advertising would have occurred in California. This is not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum; on the contrary, most of the future of the contract would have centered on the forum. The checks that [the plaintiff] would have sent [the defendant-novelist] . . . would have depended upon activities in California and the United States. In looking at the "economic reality," it seems that the contract's subject would have continuing and extensive involvement with the forum.

*Id.*

9

The Court concludes that Legal Additions has a made a sufficient showing that JKC purposefully availed itself of the privilege of conducting activities in California by virtue of its alleged joint venture activities with Legal Additions.

Having concluded that there is an adequate showing of purposeful availment, the Court turns to the second and third prongs of the specific jurisdiction test. Under the second prong, the claim must be one which arises out of or relates to the defendant's forum-related activities. Clearly, that is the case here. Legal Additions claims that JKC breached the contract between the parties by failing to share a portion of the MSK commissions that it earned. But for Legal Additions's identification of MSK as a prospect during its business dealings with JKC pursuant to the joint venture, the MSK placement would not have materialized. *See* Gainer Decl. ¶¶ 38, 40 ("Kowalski was excited by the prospect of MSK using us to assist in the opening of their New York office, and asked that we set up a meeting with Lambert [MSK's Chairman] when Kowalski planned to visit Los Angeles the first week of August 2007."). The Court acknowledges Defendants' contention that Mr. Kowalski independently knew of MSK's interest in opening a New York office prior to Legal Additions's discovery. *See* Kowalski Decl. ¶¶ 18, 20 ("it as not a true referral from Legal Additions, since I was already aware of MSK's plans for a New York office"). However, at this juncture, the Court must resolve conflicts in evidence in favor of Plaintiff.

As for the third prong, as noted above, it is JKC's burden to come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *See Boschetto*, 539 F.3d at 1016. If JKC meets this burden, then it may defeat jurisdiction in spite of its purposeful availment. *See Asahi Metal Industry Co. Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 115 (1987). The reasonableness determination requires consideration of the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

In the instant case, JKC has failed to make a compelling case in its favor. Several of the factors actually favor Legal Additions – for example, given the scope of the alleged joint venture, JKC's purposeful interjection into California cannot be said to be limited. *See Roth*, 942 F.2d at 623 (concluding that, because "appellees purposefully availed themselves of the privilege of conducting activities in California, there is no need to analyze this first factor separately"). Also, there is no indication in the record that litigation of the matter here in California would conflict with the sovereignty of JKC's state (*i.e.*, New York),[3] and California has a strong interest in having the litigation here given that Legal Additions is a California corporation and the injury from non-payment would be felt in this state. *Cf. Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002) ("California has a strong interest in providing a forum for its residents and citizens who are tortiously injured.").

Other factors weigh, at best, only marginally in JKC's favor. For instance, there will undoubtedly be some burden on JKC to litigate in California, but "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004); *see also Sher*, 911 F.2d at 1365 (noting that, "[i]n this era of fax machines and discount air travel, requiring the [defendant] to defend itself in California . . . would not be so unreasonable as to violate due process"). Also, even though New York is an available alternative forum for resolution of this dispute, it is not clear that New York is a more reasonable forum – and even if it were, that is not enough to establish a due process violation. To establish a due process violation, Defendants "must show that jurisdiction in California would make the litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Sher*, 911 F.2d at 1365 (internal quotation marks omitted).

As for the remaining reasonableness factor – *i.e.*, where the most efficient judicial resolution of the controversy is – it is, in essence, neutral. This factor is primarily concerned with the location

---

[3] Even if there were some competing sovereignty interests, the Ninth Circuit has noted that these "are best addressed through choice-of-law rules rather than jurisdictional tests." *Sher*, 911 F.2d at 1365 n.5.

11

of the witnesses and evidence. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Where witnesses and evidence are located in both the forum state and another state, neither state has "a clear efficiency advantage." *Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) (making this point with respect to witnesses). In the instant case, witnesses and evidence will be located both in California and in New York (as well as Washington D.C.), therefore this factor does not favor either Legal Additions or Defendants. At the hearing, Legal Additions disavowed any claim that it was involved in the actual New York placements other than informing JKC of MSK's interest in hiring New York attorneys. Thus, no witnesses located in New York knowledgeable about the specifics of the placement need be called.

In sum, because Legal Additions has adequately established that (1) JKC purposefully availed itself of the privilege of conducting activities in California and that (2) the breach-of-contract claim arises out of or is related to JKC's forum-related activity, and because (3) JKC has failed to make a compelling case that jurisdiction in this case would be unreasonable, the Court concludes that there is specific jurisdiction over the breach-of-contract claim.

E.  Fraud

In its fraud claim, which is asserted not only against JKC but also against Mr. Kowalski as an individual, Legal Additions contends that Defendants misrepresented that they would share one half of all commissions earned on the joint venture with Plaintiff, thereby prompting Plaintiff to perform on the contract and rely to its detriment.

With respect to JKC, there is pendent jurisdiction for the fraud claim because there is no dispute that this claim arises out of the same common nucleus of operative facts as the breach-of-contract claim. *See Action Embroidery*, 368 F.3d at 1180 ("a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction"). That being said, even without pendent jurisdiction, the Court concludes that there would be jurisdiction over the fraud claim for the reasons discussed below.

As for Mr. Kowalski, the Court notes that he is not automatically subject to jurisdiction simply because JKC is. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n.13 (1984) ("But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."); *see also Davis v. Metro Prod., Inc.*, 885 F.2d 515, 521-22 (9th Cir. 1989) (stating that a corporate officer's contacts must be assessed individually in order to meet due process requirements). But, as a practical matter, JKC's contacts with the forum state were made through Mr. Kowalski. *See* Kowalski Decl. ¶ 37 (stating that he was "personally responsible for all of the substantive contacts with potential merger and placement prospects"). Thus, for purposes of this motion, there is no need to address personal jurisdiction with respect to each Defendant separately.

As to whether there is personal jurisdiction on the fraud claim over Mr. Kowalski, and therefore JKC as well, the Court turns to the three-prong specific jurisdiction test discussed above. *See* Part C, *supra*.

Under the first prong, the issue is whether Defendants purposefully directed their activities toward California. *See Schwarzenegger*, 374 F.3d at 802 (noting that the purposeful availment analysis is typically used in suits sounding in contract whereas a purposeful direction analysis is typically used in suits sounding in tort). The Ninth Circuit has stated that there is purposeful direction where the defendant has allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (internal quotation marks omitted). Each of these elements has been satisfied in the instant case.

First, Defendants have allegedly engaged in intentional fraud – *i.e.*, Defendants purportedly represented that they would share commissions with Legal Additions pursuant to the joint venture but subsequently refused to split the MSK commissions. *See* Gainer Decl. ¶ 64 (In response to Mr. Gainer's email of 12/28/07 which stated, "David is concerned that we will still be commissioned on Mi[t]chell Silberberg. I assured him that this hasn't changed our arrangement and that it would not be a good idea for him to call Tom Lambert," Mr. Kowalski wrote, "Correct."); *id.* ¶ 63 (After the MSK placement, Mr. Kowalski reassured Mr. Gainer that "there would be a large commission in which we would share."). Second, "the express aiming requirement is satisfied when the defendant

is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1125 (9th Cir. 2004) (internal quotation marks omitted). Here, the alleged misrepresentation was clearly targeted at Legal Additions and there is no real dispute that Defendants had knowledge that Legal Additions is a resident of California. *See Bancroft & Masters*, 223 F.3d at 1088 (express aiming at California found where defendant sent plaintiff a letter with the alleged intent and result of disrupting plaintiff's California business). Finally, Defendants knew that the harm was likely to be suffered in California given that Legal Additions is a resident of the state. *See Dole Food*, 303 F.3d at 1113 (noting that "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business").

As for the second prong of the specific jurisdiction test, Legal Additions has adequately demonstrated that the fraud claim arises out of or is related to Defendants' forum-related activities. "The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement." *Data Disc*, 557 F.2d at 1288 (finding that material misrepresentations on which plaintiff relied are sufficient to show that plaintiff's claims arose from defendant's contacts). Here, Legal Additions devoted considerable work premised on false expectations that the fee agreement would be honored. According to Legal Additions, had it "know[n] that [Mr. Kowalski] did not intend to fulfill his part of the bargain, [it] would have immediately ended business with him, started working with other recruiting companies and would have referred them MSK in order to earn [its] fifty percent of ensuing commissions." Gainer Decl. ¶ 47.

Finally, on the third prong of the specific jurisdiction test, for reasons similar to those discussed in Part D, *supra*, Defendants have failed to make a compelling case that the exercise of jurisdiction in this case would not be reasonable.

In sum, the Court concludes that there is specific jurisdiction on the fraud claim for both Defendants.

///

///

14

## II. **MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Defendants have moved under 12(b)(3) to either dismiss this action for improper venue or in the alternative, transfer venue to the Southern District of New York. In a diversity case, venue lies where "all defendants reside, if all defendants reside in the same state" or where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). When a plaintiff commences suit in the wrong district, the court shall either dismiss or transfer the case. 28 U.S.C. § 1406(a). Even where venue is proper, the court has discretion to transfer the case for "the convenience of parties and witnesses" or "in the interest of justice" to a district where the case might have been brought. 28 U.S.C. § 1404(a).

Generally, venue must be established as to each cause of action. *Rothstein v. Carriere*, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999). However, if venue is proper on one claim, the court may find pendent venue for claims that are closely related. *See Reuber v. United States*, 750 F.2d 1039, 1048 (D.C. Cir. 1984) *aff'd*, 787 F.2d 599 (D.C. Cir. 1986) (listing three factors to consider in reviewing the propriety of pendent venue: 1. whether the claims originate from a common nucleus of operative fact; 2. the existence of common issues of proof; and 3. the existence of similar witnesses.); *see* 17-110 Moore's Federal Practice - Civil § 110.05; *see also Pacer Global Logistics, Inc. v. National Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 790 (E.D.Wis. 2003).

The Court holds that venue lies in the Northen District of California because a substantial part of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1391(a)(2); *Commercial Lighting Products, Inc., v. U.S. Dist. Court*, 537 F.2d 1078, 1080 (9th Cir. 1976). In determining where a "substantial part" of the events or omissions occurred, the entire sequence of events underlying the claim is relevant. *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (citation omitted). In contract cases, venue is based on the place of intended performance rather than the place of repudiation. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (finding that because the "place of performance is determined at the inception of the contract and [] parties can anticipate where they may be sued . . . [it] is likely to have a close nexus to the underlying events"). Here, performance under the alleged joint venture necessarily

called for substantial performance in California where Legal Addition resides. *See Olson v. Entre Computer Centers, Inc.*, No. C-87-20417-WAI, 1988 WL 216814 (N.D. Cal. Aug. 16, 1988) (finding venue proper where the contract in dispute contemplated ongoing performance in California). Defendants' conduct here resulted in business damages to Legal Additions in Northern California.. Furthermore, where it is "[plaintiff's] work that allegedly created his entitlement to the payment he now seeks," the work under the contract constitutes a substantial part of the events. *See Mitra no v. Hawes*, 377 F.3d 402, 405-06 (4th Cir. 2004). Legal Addition's work in informing JKC of MSK's interest in expansion presumably originated from Legal Addition's offices which is located solely in this district. *See* Gainer Decl. ¶ 1 ("I have one office located at my residence in San Rafael, California."). As for Plaintiff's tort action, venue is proper where the parties acted or the injuries occurred. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001). Venue thus lies in this district.

Although the case could have been brought in the Southern District of New York, the Court declines to transfer venue. Defendants have not met their burden of showing that their preferred forum is more appropriate given the convenience of the parties and witnesses and interest of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499, n.22 (9th Cir. 2000) ("under the doctrine of forum non coveniens, [the defendant] bears the burden of proving that an adequate alternative forum exists"). Defendants claim that the court should transfer the case for the convenience of their witnesses, namely six New York attorneys that JKC placed in MSK. Defendants additionally allege that attorneys from Crowell in Washington D.C. and from three law firms in Southern California are relevant witnesses. Plaintiff argues that the only relevant witnesses to the suit are the parties themselves and Mr. Lambert, the Chairman of MSK in Los Angeles. The Court agrees with Plaintiff. To resolve the threshold dispute over the scope and existence of the joint venture, witness testimony may include Crowell attorneys in California, as well as testimony from the parties. Yet the critical witnesses are those party to the MSK project: Mr. Gainer and Mr. Pauker of Legal Additions in Northern California; Mr. Lambert, the Chairman of the Los Angeles MSK office; and Mr. Kowalski of JKC in New York. As noted above, it was made apparent at the hearing that the

New York witnesses to the actual placement with MSK are not essential to the resolution of any dispute. Thus, the Court holds that a transfer under 28 U.S.C. § 1404(a) is unwarranted.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendants motion to dismiss for lack of personal jurisdiction and motion to dismiss for improper venue or transfer venue.

The Court also directs that parties refrain from filing further motions until after the scheduled settlement conference.

This order disposes of Docket Nos. 16, 18, and 45.

IT IS SO ORDERED.

Dated: April 30, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge