1
2
3
4
5      UNITED STATES DISTRICT COURT
6      NORTHERN DISTRICT OF CALIFORNIA
7
8   LEGAL ADDITIONS LLC,                    No. C-08-2754 EMC
9            Plaintiff,
                                            **ORDER GRANTING IN PART AND**
10       v.                                 **DENYING IN PART DEFENDANTS'**
                                            **MOTION TO DISMISS**
11  JEROME KOWALKSI, *et al.*,
                                            **(Docket No. 87)**
12           Defendants.
    _____/
13
14
15          Plaintiff Legal Additions LLC has filed suit against Defendants Jerome Kowalski, Kowalski

16  & Associates Inc., and Jerome Kowalski & Co. Inc. for, *inter alia*, breach of contract and fraud.

17  Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim for

18  relief.  Having considered the parties' briefs and accompanying submissions, as well as the oral

19  argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

20                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

21          Legal Additions initiated this lawsuit in June 2008.  *See* Docket No. 1 (complaint).  After

22  being served with a first amended complaint ("FAC"), Defendants filed a motion to dismiss for lack

23  of personal jurisdiction and a motion to dismiss for improper venue.  *See* Docket No. 16 (motion);

24  Docket No. 19 (motion).  This Court denied both motions.  *See* Docket No. 54 (order).  Thereafter,

25  in May 2009, Defendants answered the FAC.  One of the affirmative defenses asserted in the answer

26  was failure to state a claim for relief.  *See* Docket No. 55 (answer).

27          In October 2009, Legal Additions moved for leave to file a second amended complaint

28  ("SAC").  Legal Additions asked to make one amendment only – *i.e.*, to include an allegation of

alter ego as a basis for liability against Mr. Kowalski individually.  *See* Docket No. 70 (motion).

Defendants filed a statement of nonopposition to the motion, *see* Docket No. 76 (statement of

nonopposition), and therefore Legal Additions filed its SAC in November 2009.  *See* Docket No. 80

(SAC).  Approximately a week later, Defendants filed the currently pending motion to dismiss for

failure to state a claim for relief.

## II.    DISCUSSION

A.    Legal Standard

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  As

a technical matter, Defendant's motion should be construed only in part as a 12(b)(6) motion.  Most

of the motion should be considered a 12(c) motion instead, *i.e.*, a motion for judgment on the

pleadings.

Defendants' motion is properly considered a 12(b)(6) motion to the extent they argue that

Legal Additions has failed to state a claim for alter ego liability.  Legal Additions did not make any

allegation of alter ego liability until it filed the SAC; therefore, this was the first opportunity for

Defendants to challenge that allegation.

However, to the extent Defendants argue that Legal Additions has failed to state a claim for

relief for any of the substantive claims (breach of contract, fraud, etc.), the motion is properly

considered a Rule 12(c) motion.  The motion should not be considered a 12(b)(6) motion because,

previously, Defendants moved to dismiss the FAC pursuant to Rule 12(b)(2) (lack of personal

jurisdiction) and Rule 12(b)(3) (improper venue).  At that time, Defendants could have made each of

the arguments on the substantive claims that is now making in the currently pending motion.  (The

FAC and SAC contain the exact same allegations, except for the new allegation on alter ego

liability.)  Under Rule 12(g)(2), Defendants *should* have made those arguments.  *See* Fed. R. Civ. P.

12(g)(2) (stating that, with certain exceptions, "a party that makes a motion under this rule must not

make another motion under this rule raising a defense or objection that was available to the party but

omitted from its earlier motion").

Of course, that Defendants failed to make a 12(b)(6) motion at the time it made the 12(b)(2)

and 12(b)(3) motions does not mean that it is barred from making a 12(c) motion.  Rule 12(h)(2)

expressly provides that "[f]ailure to state a claim upon which relief can be granted . . . may be raised by a motion under Rule 12(c)," *i.e.*, a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2); *see also* 2-12 Moore's Fed. Prac. – Civ. § 12.23 (noting that "Rule 12 provides exceptions to the waiver resulting from Rule 12(g)'s prohibition against successive motions in Rule 12(h)(2), because certain defenses are considered so fundamental that they may be raised even during trial"; adding that, "[i]f omitted from the initial motion, those matters may not be raised in a successive Rule 12(b) motion, but may be raised . . . in a Rule 12(c) motion for judgment on the pleadings"). The Court notes that it is especially appropriate to treat the motion here as a 12(c) motion given that Defendants filed an answer to the FAC, which as noted above is essentially identical to the SAC but for the new alter ego allegations. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (concluding that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)").

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed so long as the motion is filed "early enough not to delay trial." Fed. R. Civ. P. 12(c). In the instant case, trial is scheduled for late April 2010. Accordingly, the Court deems the 12(c) motion timely filed. Deeming the motion such is also consistent with the case management order governing this action, which provides that the last day to hear dispositive motions is February 3, 2010.

As for the legal standards for 12(b)(6) and 12(c) motions, they are essentially the same. The issue is whether the complaint contains sufficient factual allegations which, taken as true, state a facially plausible claim for relief. *See, e.g.*, *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (noting that "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss; adding that "to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true") (internal quotation marks omitted).

B.    Voluntary Dismissal of Certain Claims

In their 12(b)(6)/12(c) motion, Defendants challenge each of the claims pled in the SAC: (1) breach of contract, (2) fraud, (3) accounting, (4) declaratory relief, and (5) appointment of a receiver or trustee.  In its opposition, Legal Additions has stated that it is willing to dismiss the last two claims "[g]iven the progress of the proceedings and discovery in this case."  Opp'n at 14.  Accordingly, the claims for declaratory relief and appointment of a receiver or trustee are dismissed, and the Court need only address the claims for breach of contract, fraud, and accounting.

C.    Breach of Contract

For the breach-of-contract claim, Defendants' main arguments are as follows: (1) to the extent Legal Additions alleges that it formed a joint venture with Defendants, Legal Additions has failed to make sufficient allegations about the existence of a joint venture and (2) even if Legal Additions adequately pled a joint venture, it has failed to allege what each side promised to do under the joint venture.  Each of these arguments, as discussed below, is rejected.

1.    Joint Venture

In the SAC, Legal Additions alleges that, on or about January 23, 2006, it entered into a joint venture with Defendants "for the purpose of cooperating in the placement of attorneys and other legal personnel to law firms and corporate legal departments, including mergers of law firms and expansions of law firm offices.  The venture included an agreement to share equally on a 50/50 basis, commissions obtained from this endeavor."  SAC ¶ 10.  According to Defendants, this allegation is not enough to establish the existence of a joint venture because the key characteristic of a joint venture – in contrast to a partnership – is that it is limited in terms of scope and duration.  *See, e.g.*, *Keyes v. Nims*, 43 Cal. App. 1, 9 (1919) (stating that "one of the distinctions differentiating a partnership from a joint adventure lies in the fact that, while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure relates to a single transaction, although the latter may comprehend a business to be continued for a period of years").  Defendants assert that Legal Additions has alleged only "a continuing, vaguely-defined business venture for an indefinite period of time."  Mot. at 11.

The problem with Defendants' argument is that, while the scope and duration of a joint venture may distinguish it from a partnership, that does not mean those characteristics are the *sine qua non* of a joint venture. In fact, other cases cited by Defendants define a joint venture in different terms. Under California law,

> [a] joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. The elements necessary for its creation are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control.

*580 Folsom Assocs. v. Prometheus Dev. Co.*, 223 Cal. App. 3d 1, 15-16 (1990) (internal quotation marks omitted). As the court explained in *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal. 2d 850, 863 (1968), "[a] joint venture exists when there is 'an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.'"[1] "The essential element of a joint venture is an undertaking by two or more persons to carry out a single business enterprise jointly for profit." *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 525 (2008). In the instant case, Legal Additions has adequately alleged each of the above elements in ¶ 10 of the SAC.

While Defendants might argue that the third element – *i.e.*, a right to joint control – has not been adequately pled, that argument is not convincing in light of *Unruh-Haxton v. Regents of University of California*, 162 Cal. App. 4th 343 (2008). There, the court held that the third element was adequately pled based on allegations that the parties had entered into a joint venture agreement

---

[1] In *Connor*, the California Supreme Court concluded that there was no joint venture because,

> [a]lthough the evidence establishes that Great Western and Conejo combined their property, skill, and knowledge to carry out the tract development, that each shared in the control of the development, that each anticipated receiving substantial profits therefrom, and that they cooperated with each other in the development, there is no evidence of a community or joint interest in the undertaking. Great Western participated as a buyer and seller of land and lender of funds, and Conejo participated as a builder and seller of homes. Although the profits of each were dependent on the overall success of the development, neither was to share in the profits or the losses that the other might realize or suffer. Although each received substantial payments as seller, lender, or borrower, neither had an interest in the payments received by the other.

*Connor*, 69 Cal. 2d at 863.

to operate a business and did so operate the business. The court noted that "[t]he allocation of responsibilities in operating the business does not necessarily change the character of the joint venture relationship" because "[o]ne having the right to control a business is permitted to delegate responsibilities." *Id.* at 371. *See also April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 819 (1983) (concluding that plaintiff had adequately pled a joint venture where it alleged, *inter alia*, a "common enterprise to seek syndication of [a television] show after it was produced and originally telecast," with the necessary joint control being "supplied by the allegation that each party agreed to have equal rights to initiate syndication of the show"). Here, the allegations are sufficient to imply ultimate joint control in their cooperative efforts.

The bottom line is that, while, ultimately, a jury may conclude there was no joint venture between Legal Additions and Defendants, that is a factual question for the jury to resolve, not for the Court at this juncture of the proceedings. *See Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995) (noting that "[t]he existence or nonexistence of a joint venture is a fact question for resolution by the jury").

2.    Mutual Promises

Defendants contend that, even if Legal Additions adequately pled a joint venture, it has failed to allege what each side promised to do under the joint venture. Again, ¶ 10 of the SAC establishes otherwise. The mutual promises were to share commissions obtained from cooperation in the placement of attorneys and other legal personnel in law firms and corporate legal departments. *See* SAC ¶ 10.

To the extent Defendants argue that the e-mails exchanged between the parties do not evidence any such agreement, that argument is without merit. On its face, the e-mail exchange of January 23, 2006, could be interpreted as reflecting such an agreement. Mark Gainer of Legal Additions wrote to Mr. Kowalski, stating: "I look forward to working with you especially, on New York placements. We have agreed to split commissions earned on shared placements on a 50/50 basis." Mot., Ex. A (e-mail exchange). Mr. Gainer then provided information as to how the parties should work on a particular placement. Mr. Kowalski responded: "The arrangement is perfectly fine." Mot., Ex. A (e-mail exchange).

D.    <u>Fraud</u>

Defendants challenge next the fraud claim asserted by Legal Additions.  According to Defendants, the claim as pled is insufficient as a matter of law because Legal Additions has failed to allege that Defendants' promise was false at the time it was made.  Defendants also argue that Legal Additions has failed to allege when the promise was made and that Legal Additions justifiably relied on any promise.

The latter arguments are not especially persuasive.  The e-mail exchange of January 23, 2006, reflects when the allegedly fraudulent promise was made, and Legal Additions specifically alleges in the SAC that it relied on that promise.  *See* SAC ¶ 25.  Whether or not that reliance was justified is a factual matter for the jury to resolve.  *See W. Shield Investigations & Sec. Consultants v. Superior Court*, 82 Cal. App. 4th 935, 957 (2000) (noting that "[q]uestions of materiality and justifiable reliance constitute questions of fact which [ordinarily] cannot be resolved on summary adjudication").

That being said, the Court agrees with Defendants' first argument.  Legal Additions's fraud claim is essentially a cause of action for promissory fraud – *i.e.*, Defendants fraudulently induced Legal Additions to enter into a contract.  This "requires proof that [Defendants] made a misrepresentation of fact or a promise without any intention of performing it."  *Service by Medallion v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996).  In the SAC, Legal Additions never expressly alleges that, *at the time the parties' entered into the joint venture*, Defendants never intended to share commissions as promised.  Moreover, it cannot reasonably be inferred from the SAC that, at the time the parties' entered into the joint venture, Defendants never intended to share commissions as promised.  Legal Additions's allegation in ¶ 24 of the SAC – *i.e.*, that "Defendants knew that [Legal Additions] would not have performed such work had [it] known that Defendants were not intending to fulfill said contractual joint venture arrangement" – is not sufficient.  SAC ¶ 24.

Accordingly, the Court dismisses the fraud claim as pled in the SAC.  The dismissal shall be without prejudice so that Legal Additions may, if it so wishes, replead the fraud claim to the extent it can do so consistent with Federal Rule of Civil Procedure 11.

E.      Accounting

Defendants argue that the accounting claim should be dismissed because such a claim requires the existence of a fiduciary relationship between the parties and here Legal Additions has failed to adequately plead a joint venture. *See* 5 Witkin Cal. Proc. Plead § 819 (stating that an action for an accounting "may be brought to compel the defendant to account to the plaintiff for money or property, (1) where a fiduciary relationship exists between the parties, or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable"). For the reasons discussed above, Legal Additions has adequately pled a joint venture.

F.      Alter Ego

Finally, Defendants challenge Legal Additions's assertion that, where any of the Kowalski entities should be held liable, Mr. Kowalski as an individual should also be held liable based on an alter ego theory. The basic question here is whether there are sufficient allegations in the SAC to make Legal Additions's claim that Mr. Kowalski is the alter ego of the Kowalski entities facially plausible.

In the SAC, Legal Additions alleges as follows:

> At all times herein mentioned there existed a unity of interest in the ownership between Defendant Jerome Kowalski and the Defendant corporations, such that any individuality and separateness between him and the corporations ceased to exist rendering his corporations his alter ego. Adherence to the fiction of the separate existence of the Defendant corporations as distinct from Defendant Jerome Kowalski would permit an abuse of the corporate privilege and would sanction fraud, inequity and promote injustice by his ability to avoid and prevent attachment and execution by creditors of the Defendant corporations, including [Legal Additions], thereby rendering the Defendant corporations insolvent and unable to meet their obligations.

SAC ¶ 6. Legal Additions contends that this allegation is sufficient because, under California law, the "two requirements for application of [the alter ego] doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Automotriz del Golfo de California S. A. de C. V. v. Resnick*, 47 Cal. 2d 792, 796 (1957);

8

*see also Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985) (same); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1341 (2009) (same).

The problem with Legal Additions's argument is that it fails to take into account the requirements that the Supreme Court has now imposed through *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Under those cases, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In the instant case, ¶ 6 of the SAC contains only conclusory factual content. These conclusory allegations stand in contrast to cases where there were specific factual allegations supporting an alter ego claim. *Compare, e.g.*, *Laguna v. Coverall N. Am., Inc.*, No. 09cv2131 JM(RBB), 2009 U.S. Dist. LEXIS 118098, at *7-9 (S.D. Cal. Dec. 18, 2009) (concluding that alter ego liability was facially plausible because "[t]he SAC alleges that Allied is the sole shareholder in Coverall and Coverall Cleaning Concepts, LLC; regularly removed cash and other assets from Coverall to minimize the ability of creditors to attach funds; did not respect normal corporate formalities (failed to keep corporate minutes and/or backdated such minutes); failed to contribute capital, issue stock, or otherwise complete the formation of these entities; and failed to provide adequate capital and operating funds"); *Lacey v. Malandro Commun., Inc.*, No. CV-09-01429-PHX-GMS, 2009 U.S. Dist. LEXIS 113993, at *16-18 (D. Ariz. Dec. 8, 2009) (concluding that alter ego liability was facially plausible because "[t]he amended complaint alleges that the Company is a shell corporation that was undercapitalized and that it does not possess sufficient assets to satisfy Plaintiff's judgment," "that Ms. Malandro is the sole and executive shareholder of the company and that she failed to maintain the requisite corporate formalities," and "that Ms. Malandro intentionally drained the Company of any assets, misused corporate funds to perform exclusively personal tasks, and misreported income to the Internal Revenue Service"); *Fund Raising v. Alaskans for Clean Water*, No. CV 09-4106 AHM (VBKx), 2009 U.S. Dist. LEXIS 106549, at *11-12 (C.D. Cal. Oct. 29, 2009) (concluding that *Twombly* and *Iqbal* standards were met where "[p]etitioner has alleged specific facts that indicate that 'separate personalities of the corporation and the individual no longer exist' – including that Gillam has commingled his assets

with those of the corporations and that he has failed to observe corporate formalities"). *See DirecTV Latin Am., LLC v. Park 610, LLC*, No. 08 Civ. 3987 (VM) (GWG), 2009 U.S. Dist. LEXIS 110295, at *66-68 (S.D.N.Y. Nov. 27, 2009) (taking note that, under *Iqbal*, naked assertions devoid of further factual enhancement are insufficient to state a claim; concluding that there were insufficient allegations to establish alter ego liability because "[t]he second amended complaint simply alleges that Park 610 was owned by Tumely and Loraine, that Tumely and Loraine were in turn wholly owned by Avila, and that Tumely and Loraine were the instruments of Avila, Pratola, and Zunda's fraudulent conduct"); *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, No. 08 Civ. 2991 (RJH), 2009 U.S. Dist. LEXIS 89355, at *9-10 (S.D.N.Y. Sept. 28, 2009) (concluding that allegations were not sufficient to establish reasonable grounds for alter ego liability because "[t]he Third Amended Complaint contains primarily conclusory allegations that merely recite the factors considered by courts in this Circuit when evaluating alter ego claims").

Accordingly, the Court concludes that Legal Additions has failed to state a claim for relief for alter ego liability and therefore strikes the alter ego allegations from the SAC. Legal Additions has leave to replead facts supporting an alter ego theory to the extent it can do so consistent with Rule 11.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. More specifically, the motion to dismiss is denied with respect to the claims for breach of contract and accounting. The motion to dismiss is granted with respect to the claim for fraud and the

///
///
///
///
///
///
///
///

allegations of alter ego liability.  Legal Additions has leave to amend the SAC to address the deficiencies discussed above for the fraud claim and the alter ego allegations.  The amended complaint shall be filed and served no later than February 9, 2010.

This order disposes of Docket No. 87.


IT IS SO ORDERED.


Dated:  January 22, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge