UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGAL ADDITIONS LLC, | No. C-08-2754 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| JEROME KOWALKSI, *et al.*, | **(Docket No. 101)** |
| Defendants. | |

Plaintiff Legal Additions LLC has filed suit against Defendants Jerome Kowalski, Kowalski & Associates Inc., and Jerome Kowalski & Co. Inc. for, *inter alia*, breach of contract and fraud. Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim for relief. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendants' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

On January 22, 2010, the Court issued an order granting in part and denying in part Defendants' motion to dismiss Legal Additions's second amended complaint ("SAC"). More specifically, the Court denied the motion with respect to the claims for breach of contract and accounting. The Court granted the motion with respect to the claim for fraud and the allegations of alter ego liability. Legal Additions was given leave to amend the fraud claim and the alter ego allegations. *See* Docket No. 99 (order).

Subsequently, Legal Additions filed a third amended complaint ("TAC"). In the TAC, Legal Additions dropped its alter ego allegations. Legal Additions, however, did reassert a fraud claim. With respect to the fraud claim, Legal Additions alleges as follows.

On May 5, 2005, Legal Additions and Defendants agreed to work together on legal placements. *See* TAC ¶ 7. Several months later, on January 23, 2006, Legal Additions and Defendants entered into a joint venture in which they agreed (1) to cooperate in the placement of attorneys and other legal personnel and (2) to share equally commissions obtained through these legal placements. *See* TAC ¶ 8. On December 26, 2006, Defendants confirmed the commission sharing agreement by failing to disagree with a statement by Legal Additions in which it reiterated that there was such an agreement. *See* TAC ¶ 9.

Subsequently, on July 20, 2007, Legal Additions identified the Mitchell Silberberg law firm ("MSK") as a prospect for merger with another law firm which was a client of Defendants. Legal Additions informed Defendants that MSK was not enthusiastic about a merger but was interested in expanding into the New York City market. *See* TAC ¶¶ 10-11. Legal Additions facilitated a meeting between Mr. Kowalski and MSK's chairman in July or August 2007. *See* TAC ¶¶ 12, 23.

Thereafter, Defendants concealed from Legal Additions their dealings with MSK and further made misrepresentations to Legal Additions about their dealings with MSK in the attempt to keep all of the commissions for themselves. At the same time, Defendants reassured Legal Additions that they would honor the commission sharing agreement. *See* TAC ¶¶ 23-24, 26-29. According to Legal Additions,

> [t]he objectives for Kowalski's intentional and fraudulent efforts and conduct were to dissuade and prevent [Legal Additions] from inquiring into and thus discovering the true nature of the developing deal with MSK, and also to dissuade and prevent Plaintiff from becoming involved therein, so that Plaintiff would not discover that a deal was developing with MSK that would fall within the joint venture agreement and to conceal Kowalski's true intentions not to honor the agreement to share commissions. Kowalski carried out these objectives in order to prevent Plaintiff from taking immediate steps to protect and secure its one-half share.

TAC ¶ 24.

## II. DISCUSSION

As the Court held in its previous order, whether a motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c), the basic issue is whether or not the plaintiff's complaint contains sufficient factual allegations which, taken as true, state a facially plausible claim for relief. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In their motion to dismiss, Defendants make three arguments: (1) Kowalski & Associates Inc. should be dismissed because it was not an operative entity at the time of the events at issue; (2) the breach-of-contract claim asserted against Mr. Kowalski as an individual should be dismissed because the alter ego allegations have now been dropped; and (3) the fraud claim should be dismissed against each Defendant because (a) even assuming California law applies, Legal Additions has failed to state a claim for relief and because (b) New York law is actually controlling and, under that state law, a fraud claim based on an intent not to perform is simply a claim for breach of contract. Each of these arguments is addressed below.

A. Kowalski & Associates Inc.

With respect to all claims asserted against Kowalski & Associates Inc., Defendants argue that there should be dismissal because that particular Kowalski corporation was not a functioning entity at the time of the events at issue. In support of this argument, Defendants have asked the Court to take judicial notice of a document from the New York Department of State which indicates that Kowalski & Associates Inc. has been inactive (dissolution by proclamation/annulment of authority) as of June 26, 2002 – *i.e.*, well before the events at issue.

In its papers, Legal Additions indicates that it accepts the evidence provided by Defendants and therefore agrees to dismissal of Kowalski and Associates Inc. Accordingly, the Court hereby dismisses Kowalski & Associates from this lawsuit.

B.  Breach of Contract

In its TAC, Legal Additions asserts a claim for breach of contract against all Defendants in the action, including Mr. Kowalski as an individual. Defendants argue that the claim against Mr. Kowalski should be dismissed because the contract was between Legal Additions and the Kowalski corporation, not between Legal Additions and Mr. Kowalski as an individual. Defendants further note that there is no theory by which Mr. Kowalski as an individual should be held liable for the acts of the Kowalski corporation now that Legal Additions has dropped its alter ego allegations from the TAC.[1]

In its papers, Legal Additions contests Defendants' assertion that the contract was between Legal Additions and the Kowalski corporation only. According to Legal Additions, the argument that Mr. Kowalski

> is not personally a party to or bound by the contract is clearly refuted by his email response to Mr. Gainer's email on January 23, 2006. Mr. Gainer emailed "Jerry Kowalski" *personally* the proposed terms of their joint venture contract, and "Jerry Kowalski" and "Kowalski & Associates" together replied in twelve minutes "[t]he arrangement is perfectly fine." Kowalski [did not] limit[] his capacity as an officer or agent for any entity. Therefore, the email response on its face binds Jerome Kowalski individually.

Opp'n at 4-5.

Legal Additions' argument is without merit. First, Mr. Gainer had to e-mail Mr. Kowalski specifically because a corporation may act only through its agents. Second, the e-mail response from Mr. Kowalski indicates that he was responding simply as an agent of Kowalski & Associates. The bottom of the e-mail states:

> Jerome Kowalski
> Kowalski & Associates
> Suite 3500
> 100 Park Avenue
> New York, New York  10017
> 212 832 9070
> Fax: 212 832 9152

---

[1] To the extent Legal Additions argues that this argument was not timely made, the Court disagrees. It is true that Defendants presented this argument past the date for hearing dispositive motions. However, Defendants cannot be faulted for this situation because the Court allowed Legal Additions to file a TAC late in the proceedings.

4

Docket No. 88 (Mot., Ex. A). Nothing about the e-mail indicates that Mr. Kowalski was responding to Mr. Gainer's proposal as an agent of Kowalski & Associates *and* as an individual. Legal Additions' argument to the contrary is not facially plausible.

At the hearing, Legal Additions presented a new argument not articulated in its papers -- *i.e.*, that Mr. Kowalski had to be responding as an individual because the entity Kowalski & Associates was not a functioning entity at that time (as discussed above). The Court is not persuaded. If Mr. Kowalski had been responding as an individual, he would not have named any Kowalski entity in his e-mail. Moreover, Jerome Kowalski & Co. Inc. has repeatedly made representations in this litigation that it did business as Kowalski & Associates. Legal Additions does not dispute that "Kowalski & Associates" was a dba for Mr. Kowalski's company. Finally, the Court notes that at no time in this litigation has Legal Additions made any indication that it thought it was contracting with Mr. Kowalski as an individual, as opposed to a Kowalski corporation. Until now, its sole contention was that Mr. Kowalski was named under an alter ego theory. This eleventh hour assertion not only fails the plausibility test of *Iqbal*, it constitutes in effect an amendment to the complaint that asserts a new legal claim. Such a virtual amendment comes too late as it would prejudice Defendants given discovery has closed, there is no reasonable justification for this late claim, and we are days from trial.

Accordingly, the Court dismisses the breach of contract claim with respect to Mr. Kowalski as individual. The dismissal is with prejudice.

C.  Fraud

As indicated above, Defendants make two arguments with respect to the fraud claim as repled by Legal Additions in the TAC: that (1) even assuming California law applies, Legal Additions has failed to state a claim for relief and that (2) New York law is actually controlling and, under that state law, a fraud claim based on an intent not to perform is simply a claim for breach of contract. As a preliminary matter, however, the Court shall address Defendants' contention that Legal Additions failed to comply with this Court's order giving leave to amend because Legal Additions has now pled a "different species of 'fraud'" than it did previously. Mot. at 16.

The Court concedes that there is some merit to Defendants' contention that Legal Additions initially appeared to be making a claim for fraudulent inducement of contract and that Legal Additions' position now has changed somewhat – *i.e.*, that the alleged fraud took place during the course of the contract (*e.g.*, by concealing from Legal Additions their dealings with MSK and reassuring Legal Additions that they would honor the commission sharing agreement). But even so there is no indication that this change would be prejudicial to Defendants. In other words, the basic story that Legal Additions has told remains the same (*i.e.*, Defendants repeatedly reassured that they would share commissions), and it is highly unlikely that any new discovery would need to be conducted by Defendants given Legal Additions' slight change in position. The Court therefore turns to the two main arguments identified above. Ultimately, the Court does not address the second argument because it agrees with Defendants that, under California law, Legal Additions has failed to state a claim for relief.

The Court begins by noting that it does not agree with Defendants' assertion that, under California law, an affirmation of a pre-existing obligation can never be fraud. *See* Mot. at 21. Legal Additions has correctly pointed to *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) which indicates to the contrary. That being said, read closely *Robinson Helicopter* is actually more supportive of Defendants' position rather than Legal Additions's. In *Robinson Helicopter*, the California Supreme Court articulated what is known as the economic loss rule. The rule provides that,

> [w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, *unless he can demonstrate harm above and beyond a broken contractual promise*. Quite simply, the economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other.

*Id.* at 988 (emphasis added; internal quotation marks omitted). Notably, in *Robinson Helicopter*, the plaintiff was able to demonstrate harm above and beyond a broken contractual promise: the defendant's provision of faulty clutches exposed the plaintiff to liability for personal damages if the plaintiff's helicopters, which incorporated the faulty clutches, crashed and further exposed the plaintiff to disciplinary action by the FAA. *See id.* at 991. These were costs and liabilities normally not recoverable for breach of contract.

The instant case is distinguishable from *Robinson Helicopter* precisely because Legal Additions has failed to point to any harm above and beyond Defendants' broken contractual promise. The harm from the alleged broken contractual promise was the loss of a share in the MSK commissions. Likewise, the harm from the alleged fraud was the loss of a share in the MSK commissions. *See Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009) (noting that "the damages plaintiffs seek [for the alleged misrepresentations] are the same economic losses arising from the alleged breach of contract (i.e., loss of commissions)"). At the hearing, Legal Additions argued that there was harm above and beyond because, even though the amount of money was the same under either cause of action (*i.e.*, its share of the commissions), it would have been in a more advantageous or better secured position if the truth had been revealed earlier -- *e.g.*, MSK might have listed Legal Additions as a co-payee along with Defendants, Legal Additions could have sought a writ of attachment, etc. The problem with Legal Additions' argument is that it has no limits. In every case in which a fraudulent promise to perform a contract is made (after entering into the contract), a plaintiff would have been in a more advantageous or better secured position if the fraud had been revealed earlier. Yet courts have rejected such claims. *See*, *e.g.*, *id.* (plaintiff alleging fraud claim based on defendant's initial promise that plaintiff would be defendant's exclusive broker and defendant's subsequent assurances as to existence of exclusive broker relationship). If that fact alone were enough to give rise to a fraud claim independent of a breach-of-contract claim, then "the Court would open the door to tort claims in virtually every case in which a party promised to make payments under a contract but failed to do so. Such a result would be inconsistent with the reasoning offered by the California

1 Supreme Court in *Robinson*." *Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, No. C-07-02499
2 JCS, 2009 U.S. Dist. LEXIS 9875, at *50-51 (N.D. Cal. Feb. 10, 2009).

Two days after the hearing, Legal Additions submitted papers in which it made another new argument in the attempt to preserve its fraud claim. The Court denies Legal Additions's request to provide supplemental papers. The very authority cited by Legal Additions -- *Robinson Helicopter* -- set forth the economic loss rule. Therefore, Legal Additions can hardly argue that it was not adequately prepared to address the issue at the hearing.

In any event, Legal Additions seems to be arguing that the economic loss rule is applicable only to the contracting parties, *see, e.g.*, *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (stating that "[t]he economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages"), and therefore the fraud claim against Mr. Kowalski should still be viable because he was not a party to the contract. But as Legal Additions argues, because Mr. Kowalski was, as noted above, acting as an agent of the corporate defendant and not individually, Jerome Kowalski & Co. Inc. would be held liable for the fraud of Mr. Kowalski on a respondeat superior theory. Since that corporate defendant is a party to the alleged contract, the economic loss rule still applies. At bottom, the alleged fraud adds nothing to recoverable economic loss claimed by the breach of contract.

Accordingly, the Court dismisses the fraud claim with prejudice.

### III. CONCLUSION

For the foregoing reason, Defendants' motion is hereby granted.

This order disposes of Docket No. 101.

IT IS SO ORDERED.

Dated: March 19, 2010

EDWARD M. CHEN
United States Magistrate Judge